```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


MANUEL ORTEGA, JR.,              §
                                 §
          Plaintiff,             §
                                 §
v.                               §    CIVIL ACTION NO. H-06-2692
                                 §
AETNA LIFE INSURANCE COMPANY,    §
                                 §
          Defendant.             §
```

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Aetna Life Insurance Company's Motion for Summary Judgment and Brief in Support (Docket Entry No. 9). For the reasons stated below, defendant's motion will be granted and this action will be dismissed.

### I. Background

Plaintiff, Manuel Ortega, Jr., is covered by an employee welfare benefit plan (the "Plan") that provides supplemental life and voluntary Accidental Death and Dismemberment benefits coverage to him and his dependents.[1]  Defendant, Aetna Life Insurance Company, through a group insurance policy (the "Group Policy"), provides claims administrative services for benefits payable under the Plan.[2]  The Group Policy pays benefits for "bodily injury

---

[1] Plaintiff's Response and Brief in Support to Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 10, p. 1.

[2] Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, p. 3; Plaintiff's Original

caused by an accident" resulting in loss of an insured's life.[3] No benefits are payable, however, for a "loss caused or contributed to by . . . [u]se of alcohol, intoxicants, or drugs, except as prescribed by a physician."[4]  The Group Policy further states that

> Aetna shall have discretionary authority to:
>
>> determine whether and to what extent employees and beneficiaries are entitled to benefits; and
>>
>> construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.[5]

On November 28, 2005, plaintiff submitted a claim under the Plan for the October 4, 2005, death of his wife, Diane Ortega, who was enrolled in the Plan as his dependent.[6]  After reviewing Mrs. Ortega's death certificate, autopsy report, police report, and toxicology report, the claims administrator concluded that at the time of her death Mrs. Ortega's blood contained a level of the drug "methadone" beyond that which would be prescribed by a physician and that coverage was therefore excluded under the Group Policy.

---

Complaint, Docket Entry No. 1, p. 3, ¶ 10.

[3] Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, Group Life and Accident and Health Insurance Policy, p. A 00032.

[4] Id. at A 00033-34.

[5] Id. at A 00025.

[6] Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, p. 4.

In a January 27, 2006, letter defendant explained its reasons for denying plaintiff's claim for benefits and stated that it would consider any further information that plaintiff believed would be of assistance in evaluating the claim.[7] Plaintiff filed an administrative appeal and submitted an amended autopsy report, medical records, police reports, and literature about methadone.[8] After reviewing this information, defendant upheld its denial of plaintiff's claim.[9]

Plaintiff filed this action alleging his right to accidental death benefits under the Plan.[10] Defendant moves the court to enter summary judgment, arguing that no genuine issue of material fact exists because the claims administrator did not abuse its discretion.[11]

## II. Standard of Review

### A. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact, and the

---

[7]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, Letter, p. A 00095-96.

[8]Id. Exhibit A, Administrative Appeal, pp. A 00166-493.

[9]Id. Exhibit A, Letter, pp. A 00499-501.

[10]Plaintiff's Original Complaint, Docket Entry No. 1.

[11]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9.

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). To be genuine the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Id. at 2511.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 106 S. Ct. at 2553. In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial. Id.

**B. Applicable Law**

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and plaintiff seeks benefits under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). "[F]actual determinations made by the administrator during the course of a benefits review will be rejected only upon the showing of an abuse of discretion."

Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213 (5th Cir. 1999).  In this context, an administrator abuses its discretion only if it arbitrarily or capriciously denies benefits. Id. at 214.  The "arbitrary and capricious" standard is met only when there is no "rational connection" between the "known facts and the decision or between the found facts and the evidence."  Id. at 215.  The decision must be "based on evidence, even if disputable, that clearly supports the basis for its denial."  Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 299 (5th Cir. 1999).  A court's review of the administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness--even if on the low end."  Id. at 297.  However, where the administrator is shown to have a conflict of interest, the court will weigh this as a factor in its determination of the reasonableness of the decision.  Id.  The court's review of factual determinations is confined to the record available to the administrator.  Meditrust, 168 F.3d at 215.

### III. Analysis

The administrator's determination at issue in this case is whether Mrs. Ortega's death was caused or contributed to by the use of intoxicants or drugs without a prescription or in a manner that was not prescribed by a physician.  Both parties concede that this

is a factual determination.[12]  The parties agree that a conflict of interest exists since defendant both funds and administers claims under the Plan.[13]  However, this conflict is minimal and plaintiff provides no additional evidence of a greater conflict.  Consequently, the administrator's decision is reviewed "with only a modicum less deference" than would otherwise apply.  See Vega, 188 F.3d at 301.  See also Dew v. Metro. Life Ins. Co., 69 F. Supp.2d 898, 902 (S.D. Tex. 1999) ("[Plaintiff's] only evidence of a conflict is [defendant's] position as both insurer and administrator. . . . [T]his does not support a degree of conflict other than minimal.").

The court is persuaded that the administrative record contains sufficient evidence to support the administrator's decision.  First, the administrator had sufficient evidence to conclude that Mrs. Ortega's death was caused by ingestion of estazolam, a drug not prescribed by a physician.  In making its decision the administrator relied on the amended autopsy report submitted by plaintiff in his administrative appeal.[14]  This report concluded

---

[12]Plaintiff's Response and Brief in Support to Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 10, p. 2; Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, p. 11.

[13]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, p. 11; Plaintiff's Original Complaint, Docket Entry No. 1, pp. 4-5.  Plaintiff does not argue this point in his response to defendant's motion for summary judgment.

[14]Id. at A 00500.

that Mrs. Ortega's death was caused by "intoxication by the combined effects of methadone, estazolam and hydrocodone."[15] Plaintiff concedes and the administrative record supports that Mrs. Ortega did not have a prescription for estazolam, which is only available by prescription.[16] Therefore, the administrator reasonably found that Mrs. Ortega's death resulted from the ingestion of drugs that were not prescribed by her physician.

Second, the administrator had sufficient evidence that Mrs. Ortega's death resulted from the ingestion of methadone in a manner that was not consistent with her prescription. For example, the administrator relied on police reports from responding officers at the scene of death noting that Mrs. Ortega's prescription

---

[15]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, p. A 00171. Plaintiff attacks the credibility of the autopsy report because the toxicology report "indicates that there was no hydrocodone found in Diane Garza's blood." Plaintiff's Response and Brief in Support to Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 10, p. 7. However, the toxicology report is not inconsistent with the autopsy report. The toxicology report states that the hydrocodone "analysis was unsuccessful due to an interfering substance in the submitted specimen" and a result was therefore "not reported." Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, p. A 00085.

[16]Plaintiff's Response and Brief in Support to Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 10, p. 6. Plaintiff suggests by declaration that the presence of estazolam in Mrs. Ortega's system was due to a "mix up" at the pharmacy. Id. at Exhibit A, pp. 25-26. However, this affidavit was not part of the administrative record and therefore cannot be considered in reviewing the administrator's factual determination. Meditrust, 168 F.3d at 215.

bottles, including methadone, were missing pills far in excess of what was prescribed.[17]  Mrs. Ortega's physician prescribed a 10 mg dose of methadone to be taken twice daily.[18]  The police report states that six pills were missing from the methadone prescription bottle that had been filled on the date of her death.[19]  Defendant also points to the toxicology report contained in the administrative record, which states that Mrs. Ortega's blood had a methadone concentration of 370 ng/mL at the time of her death.[20]  The parties agree that this converts to 0.37 mg/L.[21]  The administrator relied on a summary of methadone characteristics from the San Diego Reference Laboratory stating that a 15 mg dose of methadone results in a peak concentration of 75 ng/mL (or 0.075 mg/L).  Mrs. Ortega had more than four times this amount in her blood at the time of her death.[22]  Defendant argues that it is

---

[17]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, pp. A 00500-01; A 00434-35.

[18]Id. at A 00259-65.  The prescription reads "t po bid," defined as "take by mouth twice a day."

[19]Id. at A 00434.

[20]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, p. A 00082.

[21]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, p. 5; id. at Exhibit A, p. A 00162.

[22]Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A, p. A 00484.

therefore reasonable to conclude that such a high concentration of methadone could not have been reached by taking the 20 mg daily dose prescribed by Mrs. Ortega's physician.  Plaintiff argues that the literature he provided in his administrative appeal states that the "toxic range" of methadone is between 0.06 and 3.1 mg/L, and that Mrs. Ortega was within this range.[23]  However, a finding that Mrs. Ortega's methadone concentration was within the clinical "toxic range" is unnecessary to support the administrator's decision.  The administrator had evidence both that Mrs. Ortega took more methadone than was prescribed by her doctor and that methadone contributed to her death.[24]  Accordingly, the administrator reasonably found that Mrs. Ortega's death was "caused or contributed to" by use of drugs not taken as prescribed by her physician.

## IV. Conclusion and Order

For the reasons stated above, the court concludes that the administrator's decision was not arbitrary and capricious, even under a modified abuse of discretion standard due to defendant's

---

[23]Plaintiff's Response and Brief in Support to Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket Entry No. 10, p. 6.

[24]Both the blood concentration level and the missing methadone pills support the conclusion that Mrs. Ortega took more than 20 mg daily dose prescribed by her doctor.  Also, the autopsy report concluded that Mrs. Ortega's death was due to "intoxication by the combined effects of Methadone, Estazolam and Hydrocodone."

conflict of interest.  Defendant's Motion for Summary Judgment (Docket Entry No. 9) is therefore **GRANTED**.

**SIGNED** at Houston, Texas, on this 16th day of April, 2007.

> /s/ Sim Lake
> SIM LAKE
> UNITED STATES DISTRICT JUDGE